UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RANDALL DENMAN,

            **Plaintiff,**

       - against -

TODD SANDERS,

            **Defendant.**

OPINION

05 Civ. 0025 (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On January 4, 2005, this diversity case was removed to the Southern District of New York from Supreme Court, New York County. Plaintiff, Randall Denman ("Denman"), had filed suit against defendant, Todd Sanders ("Sanders"), claiming assault and battery. On January 11, 2005, Sanders filed counterclaims for defamation and false imprisonment. On February 25, 2005, the parties consented to jurisdiction by the undersigned. Prior to trial, Sanders withdrew his claim for defamation. Trial commenced on December 5, 2005. At the close of plaintiff's evidence, Sanders moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("FRCP") 50, a motion which this Court denied. The jury returned a verdict for Denman: $125,000 in compensatory damages for assault, $125,000 in compensatory damages for battery, $300,000 in punitive damages for assault, and $300,000 in punitive damages for battery, for a total of $850,000. The jury further found that Denman was not liable for false imprisonment.

On December 19, 2005, Sanders renewed his motion for judgment as a matter of law, seeking to vacate the punitive awards in their entirety. He also seeks a new trial under FRCP

59(a), or in the alternative, for remittitur pursuant to FRCP 59(e) to reduce the jury verdict. Memorandum of Law in Support of Defendant's Motion Pursuant to Rule 50(b), 59(a), and 59(e) to Vacate the Jury's Award of any Punitive Damages and for a New Trial or for Remittitur to Reduce the Compensatory Award to Not More Than $5,000.00 or in the Alternative, for a New Trial or for Remittitur to Reduce the Punitive Damages to Not More Than $20,000.00 ("Sanders Mem."). Denman filed a response on January 10, 2006. Plaintiff's Memorandum of Law in Opposition to Defendant's Motions Pursuant to Rules 50(b), 59(a), and 59(e) to Vacate the Award of Punitive Damages and for a New Trial, or in the Alternative for Remittitur to Reduce the Award of Compensatory and Punitive Damages ("Denman Mem."). For the following reasons, Sanders's motion is **DENIED, IN PART**, and **GRANTED, IN PART**.

## II. FACTS

Denman, a former actor, is the manager of the Grand Havana Room, an exclusive private club in Manhattan. Trial Transcript, December 5, 2005 ("Tr. 12/5") at 3-5. Sanders is the president of two companies, and his primary work is in finance, mergers, and acquisitions. Trial Transcript, December 6, 2005 ("Tr. 12/6") at 203. At the time in question, Sanders was a member of the Grand Havana Room and regularly attended the club's California and New York locations. Tr. 12/6 at 205-06. The parties' first conflict arose several months before the night of the incident leading to this case. Tr. 12/5 at 8, 14. Sanders and some guests were visiting the club late one night. **Id**. The club's bartender, Walter Osorio ("Osorio"), who testified at trial, told Sanders the club was closing, and asked them for their "last call" drink orders. **Id**. Osorio testified that Sanders told his guests, "Watch this," and made a call on his cell phone. Tr. 12/6 at 109-10. Sanders testified that he called the club's owner, Stan Schuster ("Schuster"), asked if he

2

and his guests could stay later at the club, and that Schuster gave him permission. Tr. 12/6 at 209-10. Denman then received a call from Schuster, who told him to tell Osorio that he would be fired if he "does that again." Tr. 12/5 at 14.

On October 14, 2004, Sanders and two friends came to the Grand Havana Room at approximately 12:30 a.m. Tr. 12/5 at 16. The security guard told him the club had closed. **Id**. Sanders called Schuster, and told him he wanted to enter the club. **Id**. Schuster called Denman and told him to let Sanders into the club, which Denman did. **Id**. Denman told the remaining staff to serve Sanders as usual, with "no attitude." **Id**. at 18. Sanders and his friends bought drinks and champagne. **Id**. at 22. Eventually, Denman sent the rest of the staff home, including Osorio. **Id**. at 25-26. He also suggested to Sanders that the club would be closing soon. **Id**. at 26. Sanders responded that he wasn't finished, and ordered more drinks. **Id**. at 27. Sanders testified that he was drunk. Tr. 12/6 at 211.

At about 2:30 a.m., Denman gave Sanders his check, and Sanders signed it around 3:00 a.m. Tr. 12/5 at 28. Denman went into the kitchen to wash his hands. **Id**. at 29. Sanders came into the kitchen and complained about Denman's lack of respect. **Id**. at 30. Denman argued with Sanders, questioning his own lack of respect demonstrated by staying at the club for hours after it had closed. **Id**. The two continued to argue until Denman walked away and called Sanders an "asshole" under his breath. **Id**. at 31. Sanders demanded that Denman come back and then punched him in the head. **Id**. Both parties left the kitchen. **Id**. at 32. Denman, who was disoriented and in pain, began to clean up Sanders's table while holding his head. **Id**. As Sanders left, he made another derogatory comment to Denman and told him he was fired. **Id**. at 32-33. Sanders called Schuster, who called Denman. Denman reported there was a problem,

3

was put on hold, waited for a while, and then went home without speaking further to Schuster that night. **Id**. at 34-35.

At home, Denman felt sick. **Id**. at 35. He took a shower and found that his head was bleeding badly. **Id**. He went to the hospital, was given a tetanus shot and a bandage, and paid $50 for the emergency room visit. **Id**. at 35-37; Tr. 12/6 at 82, 92. The jury saw photos of the lacerations on his face and the emergency room medical report containing Denman's report that he was assaulted by a customer. Tr. 12/5 at 35-37. He returned to work the next day, with the bandage on his face, but did not tell co-workers what happened because he was embarrassed that he had been hit by a customer. **Id**. at 38-39. He has a one-quarter inch scar above his eye and a lasting uneasiness when tall people stand in front of him because he is afraid he will get hit again.[1] **Id**. at 39-40. Denman also reported the incident to the police. **Id**. at 37-38. Sanders was charged with a misdemeanor. Tr. 12/6 at 229. He surrendered himself to the police and spent half a day in jail. **Id**. at 227-29. The criminal case was later dismissed for failure to prosecute on a timely basis. Trial Transcript, December 7, 2005 ("Tr. 12/7") at 47.

### III. DISCUSSION

A. **FRCP 50(b) Motion to Vacate Punitive Damages**

Sanders first moves to overturn the jury's verdict pursuant to FRCP 50(b). He argues that the jury's verdict was rendered against the weight of the evidence. As a threshold issue, Sanders has failed to meet the procedural requirements of FRCP 50(b). To invoke the rule, a party must have made an initial motion under FRCP 50(a) at trial, at the close of all evidence, before seeking

---

[1] Sanders is six foot, seven inches tall and weighed 230 pounds at the time of the incident. Tr. 12/6 at 205.

4

to renew the motion under FRCP 50(b).  **Phillips v. Bowen**, 189 F.R.D. 50, 52-53 (N.D.N.Y. 1999) (*citing* **Hilord Chem. Corp. v. Ricoh Elec., Inc.**, 875 F.2d 32, 37 (2d Cir. 1989)). Furthermore, "even when a pre-verdict motion for judgment as a matter of law has been made, the movant may not add new grounds after trial.  The post-trial motion is limited to those grounds that were 'specifically raised in the prior [Rule 50(a) ] motion.'" **Id**. (*citing* **Samuels v. Air Trans. Local 504**, 992 F.2d 12, 14 (2d Cir. 1993)).  *See* **Cruz v. Local Union No. 3**, 34 F.3d 1148, 1155 (2d Cir. 1994).  Sanders's counsel made a motion at the close of the plaintiff's presentation of evidence, Tr. 12/6 at 141-42, but not at the close of all evidence.  *See* **id**. at 258-65.

Judgment as a matter of law may only be granted where there is a complete absence of evidence supporting the jury's verdict, or if the evidence in favor of the moving party is so overwhelming that no reasonable person could arrive at a verdict against it.  **Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.**, 136 F.3d 276, 289 (2d Cir. 1998); **Luciano v. Olsten Corp.**, 110 F.3d 210, 214 (2d Cir. 1997); **Cruz**, 34 F.3d at 1154.  In assessing the record, the Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party.  **Galdieri-Ambrosini**, 136 F.3d at 289; **Vasbinder v. Ambach**, 926 F.2d 1333, 1339 (2d Cir. 1991).  Further, the Court may not weigh the testimony of the witnesses, but must defer to the jury's credibility determinations.  **Galdieri-Ambrosini**, 136 F.3d at 289; **Vasbinder**, 926 F.2d at 1339.  *See* **Maldonado v. Candidus**, 2000 WL 1473606, at *2 (S.D.N.Y. Oct. 4, 2000).  Under this standard, Sanders's motion for judgment as a matter of law must be denied.

"Under New York law, punitive damages are permitted for tortious conduct in cases

involving 'gross, wanton, or willful fraud or other morally culpable conduct.'" **Cohen v. Davis**, 926 F. Supp. 399, 405 (S.D.N.Y. 1996) (*quoting* **Action S.A. v. Marc Rich & Co., Inc.**, 951 F.2d 504, 509 (2d Cir. 1991) (internal quotations omitted)). Such damages are particularly appropriate in the case of intentional torts where "'elements of fraud, malice, gross negligence, cruelty, or oppression are involved . . . '" **Pepe v. Maklansky**, 67 F. Supp. 2d 186, 187-88 (S.D.N.Y. 1999) *(quoting* **Walsh v. Segale**, 70 F.2d 698, 699 (2d Cir. 1934)).

Sanders argues that the facts as presented at trial do not demonstrate the required element of "malice or insult" necessary to sustain the jury's award of punitive damages. Sanders Mem. at 7. He states that he was intoxicated and entered the kitchen of the Grand Havana Room to register a complaint about the quality of service. **Id**. Denman became upset and raised his voice to argue with him. **Id**. According to Denman, only when he called Sanders an "asshole," did Sanders demand that he return, and then punch him. **Id**. Sanders argues that this kind of behavior, particularly his intoxication, does not constitute the kind of reckless conduct that merits punitive damages, Sanders Mem. at 7, while Denman argues Sanders's intoxication alone supports the punitive damages award. Denman Mem. at 8.

Neither party is correct on this point. Denman cites **Rinaldo v. Mashayekhi**, 585 N.Y.S.2d 615, 616 (App. Div. 3d Dep't 1992), where the court upheld a punitive damage award in a drunk driving accident, but in that case the court considered additional factors besides the defendant's drunk driving, including the speed at which he was driving and the location, a populated place. The Second and Third Departments of the Appellate Division have established that intoxication while driving does not justify punitive damages on its own. **Deon v. Fortuna**, 724 N.Y.S.2d 450, 451 (App. Div. 2d Dep't 2001); **Sweeney v. McCormick**, 552 N.Y.S.2d 707,

709 (App. Div. 3d Dep't 1990). Other New York courts have held to the contrary. **Colligan v. Fera**, 349 N.Y.S.2d 306, 309 (Civ. Ct. 1973). The courts generally require a case by case analysis of the act of driving while intoxicated as well as the surrounding circumstances. *See* **Finlay v. Simonovich**, 1997 WL 746460, at *5 (S.D.N.Y. Dec. 2, 1997) (listing cases and stating "The New York courts have recognized that driving while intoxicated can be a basis for a punitive damage award under the appropriate factual circumstances.").

In any case, this line of cases involves driving while intoxicated, and here the case involves an assault. Rather than support Denman's contention that intoxication alone supports punitive damages, the cases merely demonstrate the courts' willingness to consider intoxication as a factor when reviewing a punitive damages award.

Sanders cites **Thompson v. Corbett**, 787 N.Y.S.2d 563, 565 (App. Div. 4th Dep't 2004), in support of his contention that intoxication does not support a punitive damages award. In that case, the court dismissed the punitive damages award against *corporate* defendants, owners of a bar where an individual defendant had been served despite his apparent intoxication, and later stabbed the plaintiff. **Id**. Moreover, punitive damages *have* been allowed for assaults where the defendant was intoxicated. *See, e.g.,* **Comeau v. Lucas**, 455 N.Y.S.2d 871, 872 (App. Div. 4th Dep't 1982) (award against intoxicated member of rock band who assaulted plaintiff).

Sanders also argues that Denman's insults constitute provocation. Provocation does not justify an assault, but can be considered to mitigate damages. *See* **Levine v. Abergel**, 512 N.Y.S.2d 218, 220 (App. Div. 2d Dep't 1987); **Decker v. Werbenec**, 232 N.Y.S.2d 260, 262-63 (Sup. Ct. 1962); **Brown v. State**, 205 N.Y.S.2d 73, 80 (Ct. Cl. 1960). As there was testimony about the words exchanged between the parties, the jury has already had an opportunity to

consider this in their deliberations.

The Court, of course, must defer to the jury's credibility determinations, which were key to the outcome of this case. Given that Sanders failed to follow the procedural requirements of FRCP 50(b) and has not demonstrated that there was a complete absence of evidence supporting the jury's verdict, or that no reasonable person could arrive at the verdict the jury gave, his 50(b) motion to vacate the punitive damages award is **DENIED**.

**B.     Motion to Vacate Award for Assault**

A new trial may be granted under FRCP 59 if the jury verdict constitutes a "miscarriage of justice" or a "seriously erroneous result." **Smith v. Lightning Bolt Prod., Inc.**, 861 F.2d 363, 370 (2d Cir. 1988). Sanders argues that double recovery is not allowed and therefore the jury's two awards of $125,000 for the "exact same injury" represent a serious miscarriage of justice and must be vacated. Sanders Mem. at 9. Denman first argues that Sanders waived this argument as he failed to object to the special verdict form allowing the jury to divide its award between the two claims and, in fact, presented separate proposed jury instructions on each of the claims. Denman Mem. at 9. Second, Denman points out that assault and battery are separate claims, with separate elements, and it was allowable for the jury to allocate damages between the two claims. **Id**. at 10.

Assault and battery do have separate elements: "An 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." **United Nat. Ins. Co. v. Waterfront New York Realty Corp.**, 994 F.2d 105, 108 (2d Cir. 1993). The two torts result in separate injuries: "fear" and "contact." However, the conduct involved in causing those injuries,

8

at least in this case, is exactly the same. The Second Circuit, applying New York law, has expressed some concern about jury awards which might duplicate damages where two torts are alleged and the elements involve either overlapping injury or conduct. The line of cases merits some attention here.

The Second Circuit has recognized that where a prima facie tort and a traditional tort are involved, the New York courts do not allow recovery for both. **Hughes v. Patrolmen's Benevolent Ass'n of New York, Inc.**, 850 F.2d 876, 882 (2d Cir. 1988) ("The existence of a traditional tort does not foreclose pleading a prima facie tort . . . . What New York law prohibits is recovery of damages for both a traditional tort such as the intentional infliction of emotional distress and for a prima facie tort."). However, where two traditional torts are involved, the law is much less clear-cut than Sanders contends. For example, in **Gentile v. County of Suffolk**, 926 F.2d 142, 154 (2d Cir. 1991), the Court found that a $150,000 award divided evenly between state and federal causes of action for malicious prosecution did not constitute a double recovery, stating "it is . . . conceivable that the jury found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of the County's violations of law, and merely split the total amount equally between the state and federal causes of action in announcing their award to the court on the form submitted to it." The Court went on to note that "[d]uplication of recovery occurs by compensating a single injury under two different names. However, defendants do not demonstrate that a jury's award is duplicative merely by noting that it allocated the damages under two different causes of action." **Id**. (citations and internal quotations omitted). As a subsequent case has interpreted this holding, "seemingly duplicative awards made separately for overlapping causes of action . . . [will be] sustained where it appeared that the jury intended to

9

award the aggregate sum." **Bender v. City of New York**, 78 F.3d 787, 794 (2d Cir. 1996).

In **King v. Macri**, 993 F.2d 294, 298 (2d Cir. 1993), the Court addressed separate punitive damage awards for three causes of action involving overlapping forms of conduct: excessive force, false arrest, and malicious prosecution. While expressing "some concern that the verdict form invited the jury to make a separate award for punitive damages," the Court emphasized that "district judges retain discretion in determining whether to permit a jury to make separate punitive awards or one aggregate award, but they should bear in mind the risk that separate awards for each component of misconduct might unduly increase the amount of the total award." **Id**. at 299. The Court indicated a preference for aggregate awards, but found no plain error, noting that the defendants did not object to the verdict form. **Id**. The possible duplication did not result in the entire award being vacated, as Sanders has suggested is appropriate here, but instead contributed to the Court's analysis of whether the award should be reduced. **Id**.

While in **King** the Court considered overlapping forms of *misconduct*, in **Bender**, 78 F.3d at 793, the Court focused on the plaintiff's resulting *injury*. The Court found that a jury's separate awards for false arrest, malicious prosecution, and intentional infliction of emotional distress were substantially duplicative because the torts resulted in overlapping injuries. **Id**. The Court indicated that

> [a] proper verdict form and jury charge would have focused the jury's attention on the extent to which the injuries resulting from the various torts alleged were separate, and the extent to which they were not. As to the latter, the jurors should have been instructed that they can award additional damages, beyond what they award for an overlapping tort, only to the extent that they find some aspect of injury that has not been already compensated for by the award of damages for the related tort.

**Id**. at 794. It found plain error despite defendants' failure to object to the jury charge or verdict

form. **Id**. at 795. The Court then considered the likelihood of "impermissible duplication" in its decision to reduce the verdict. **Id**.

As mentioned above, Sanders did not object to the verdict form at trial, and submitted separate proposed jury instructions for assault and battery. While aggregate awards may be preferred, a verdict form allowing the jury to allocate damages under each cause of action is permissible. **King**, 993 F.2d at 299. As in **Gentile**, the jury here may have meant to award the aggregate sum and merely allocated the damages under each cause of action. 926 F.2d at 154. While overlapping conduct is definitely at issue in this case, assault and battery result in distinct injuries, which is the determinative factor in this kind of analysis. **Bender**, 78 F.3d at 793. Denman testified not only to his physical injuries (the contact required for battery), but the emotional effect of the incident (the fear required for assault). He testified that he suffered lacerations on his face and a permanent scar. Tr. 12/5 at 35, 36, 39. He also testified that he felt stupid and embarrassed the next day, working with a bandage on his face. **Id**. at 38-40. Finally, Denman testified he has a lasting uneasiness when tall people stand in front of him because he is afraid he will get hit again. **Id**. at 40. The jury could have considered these as separate injuries resulting from one act of misconduct for which there are two forms of liability, and sought to compensate Denman accordingly. "The policy of deferring to a jury verdict is a powerful one, even in cases in which the jury has taken action that is at first blush difficult to explain." **Gentile**, 926 F.2d at 154. The possible duplication here does not merit vacating the entire assault award. However, as in **King** and **Bender**, any duplication will be a strong consideration in analyzing whether the awards are excessive.

C.   **Motion for New Trial Pursuant to FRCP 59(a) or Motion to Reduce Damage Award Pursuant to FRCP 59(e)**

Under FRCP 59(a), ordinarily, a court should not grant a new trial "unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." **Smith**, 861 F.2d at 370.  Unlike a judgment as a matter of law, a new trial may be granted under FRCP 59 even if substantial evidence exists to support the jury's verdict.  *See* **Song v. Ives Lab., Inc.**, 957 F.2d 1041, 1047 (2d Cir. 1992).  Moreover, in considering a motion for a new trial, a court "is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner."  **Id**. (*quoting* **Bevevino v. Saydjari**, 574 F.2d 676, 684 (2d Cir. 1978)).  *See* **Bartniak v. Cushman & Wakefield, Inc.**, 223 F. Supp. 2d 524, 528 (S.D.N.Y. 2002).

Sanders argues that both the compensatory and punitive damage awards are against the weight of evidence and represent a serious miscarriage of justice.  Sanders Mem. at 11, 17.  In alternative to a new trial, Sanders seeks a remittitur of the compensatory damage award to not more than $5,000, and of the punitive damage award to not more than $20,000.  **Id**.

A federal district court considering a motion under FRCP 59 for remittitur in a diversity case should apply federal procedural standards and state substantive law.  *See* **Imgrogno v. Chamberlain**, 89 F.3d 87, 90 (2d Cir. 1996); **Gasperini v. Center for Humanities, Inc.**, 518 U.S. 415, 418 (1996).  The Supreme Court has held that in New York the district court is to apply New York Civil Practice Law and Rules § 5501(c) (McKinney 1995), because, although § 5501(c) contains a procedural instruction assigning decision-making authority to the New York Appellate Division, the State's statutory objective is manifestly substantive.  *See* **Gasperini**, 518

U.S. at 426. Although § 5501(c) is phrased as an instruction to the Appellate Division, it applies to trial judges. See **Kukla v. Syfus Leasing Corp.**, 928 F. Supp. 1328, 1336 (S.D.N.Y. 1996). The standard under § 5501(c) provides that a judge may alter a jury award where he determines that the award "deviates materially from what would be reasonable compensation." **Id**. This test replaces the common law "shock the conscience" test, requiring the court to apply more probing scrutiny of jury awards. See **Kukla**, 928 F. Supp. at 1336 (*quoting* **Gasperini**, 518 U.S. at 424). "[T]he 'deviates materially' standard . . . influences outcomes by tightening the range of tolerable awards." **Gasperini**, 518 U.S. at 425. See generally **Imbrogno**, 89 F.3d at 90; **Latowski v. Meric Trucking & Leasing, Inc.**, 1996 WL 399808, at *7 (S.D.N.Y. July 16, 1996). To determine whether a jury award deviates materially from what would be reasonable compensation, New York courts compare the award in question to verdicts approved in similar cases. **Gasperini**, 518 U.S. at 425. See **Provetto v. Pathmark Stores, Inc.**, 1997 WL 66775, at *4 (S.D.N.Y. Feb. 18, 1997).

1. **Compensatory Damages**

Sanders argues the compensatory damages award of $250,000 is excessive, particularly in light of the minimal injury Denman incurred. Sanders Mem. at 13-14. "[W]hile a jury has broad discretion to award damages as it feels appropriate . . . a jury verdict cannot stand if it is the result of a miscarriage of justice and represents a windfall to the plaintiff without regard for the actual injury." **Carter v. Rosenberg & Estis, P.C.**, 1998 WL 150491, at *5 (S.D.N.Y. Mar. 31, 1998).

In comparison to other similar cases, and in light of the "deviates materially" standard, the total compensatory damages award is excessive, especially in consideration of the types of

13

injuries Denman related at trial, and in light of the possible duplication of damages. However, Sanders's suggestion that the award be reduced to $5,000 is not required by the case law. Instead, a total compensatory award of $50,000 would be more in line with awards upheld in cases of assault and/or battery. *See* **Gardner v. Federated Dep't Stores**, 907 F.2d 1348, 1353 (2d Cir. 1990) (upholding $150,000 award for pain and suffering, but reducing $150,000 award for deprivation of liberty to $50,000 where plaintiff was falsely imprisoned and punched several times resulting in inflamation, bruises, earaches, continued hearing problems, occasional lockjaw, nightmares, depression, and paranoia); **Ramaklhan v. Mangru**, 678 N.Y.S.2d 111 (App. Div. 2d Dep't 1998) ($45,000 compensatory, $8,000 pain and suffering, and $25,000 punitive damages upheld where defendants attacked plaintiff with baseball bat resulting in serious injuries); **Merritt v. Ramos**, 639 N.Y.S.2d 643, 645 (Civ. Ct. 1995) ($250 in compensatory damages and $10,000 in punitive damages upheld where victim suffered minimal injury and sought no medical attention after being shoved, kicked, and punched by police officer); **Buggie v. Cutler**, 636 N.Y.S.2d 357, 358-59 (App. Div. 2d Dep't 1995) ($200,000 in compensatory damages awarded, and punitive damages award reduced from $650,000 to $400,000 where defendant shot at plaintiff); **Mirand v. City of New York**, 598 N.Y.S.2d 464, 471 (App. Div. 1st Dep't 1993) (reinstating verdict on appeal awarding $750,000 to one plaintiff with significant, long-term damage to hand after attack involving a knife cut to her wrist, and $50,000 to another plaintiff who was struck on the head and elbow with a hammer resulting in pain, bleeding, stitches, and black spots in front of the eyes); **Byrd v. New York City Transit Auth.**, 568 N.Y.S.2d 628, 630 (App. Div. 2d Dep't 1991) (reducing compensatory damages award from $950,000 to $250,000 in case of assault and battery, false arrest, and malicious

prosecution resulting in scars, post-traumatic stress disorder, and some loss of earning capacity, and reducing $350,000 punitive damages award to $125,000); **Levine**, 512 N.Y.S.2d at 219 (finding $25,000 in compensatory damages shocked the conscience in assault and battery case where plaintiff had suffered only minimal injury: bruises, pain, and sleepless nights); **Becker v. City of New York**, 745 N.Y.S.2d 857, 863-64 (Civ. Ct. 2002) (reducing a $250,000 compensatory damages award to $150,000 where plaintiff was pistol-whipped, kicked in the face, and suffered facial lacerations requiring stitches, eye swelling, three days in the hospital, and a scar).[2]

### 2. Punitive Damages

In assessing the validity of a punitive damages award, three factors are considered: a) the degree of reprehensibility of the defendant's conduct, b) the ratio of punitive damages to the actual or potential harm inflicted on plaintiff, and c) the difference between the remedy at issue and those authorized for comparable misconduct. **BMW of North Am., Inc. v. Gore**, 517 U.S. 559, 575, 580, 583 (1996); *accord* **Iannone v. Frederic R. Harris, Inc.**, 941 F. Supp. 403, 413-14 (S.D.N.Y. 1996). *See* **Anderson v. YARP Rest., Inc.**, 1997 WL 27043, at *9 (S.D.N.Y. Jan. 23, 1997). The purpose of punitive damages is "'to punish the defendant and to deter him and others from similar conduct in the future.'" **Lee v. Edwards**, 101 F.3d 805, 809 (2d Cir. 1996) (*quoting* **Vasbinder v. Scott**, 976 F.2d 118, 121 (2d Cir. 1992)). As with the compensatory award, the $600,000 punitive damages award given here deviates materially from those given in similar cases and must, therefore, be reduced or a new trial ordered. As outlined below, an award

---

[2]Sanders also cites a number of unchallenged jury verdicts, many of which are much lower than those cited here. However, the law requires the Court to consider verdicts that have been approved by the courts. **Gasperini**, 518 U.S. at 425.

15

of $200,000 would be more appropriate.

### a. Reprehensibility

An evaluation of the reprehensibility of a defendant's acts requires a consideration of three aggravating factors: the presence of violence, deceit or malice as opposed to negligence, and repeated misconduct. **Id**. at 809. Here, Sanders's conduct involved violence and his intoxication demonstrates recklessness rather than negligence. Provocation can be considered to mitigate damages, **Levine**, 512 N.Y.S.2d at 220, but Sanders began the heated argument, and Denman's single insult is hardly commensurate with a blow to the head. As for malice, in deciding its punitive damages award, the jury likely considered not only Sanders's final act of violence, but his repeated exercise of influence over Denman and other staff at the Grand Havana Room. However, the fact that an on-going conflict erupted into a one-time incident of violence which escalated no further does mitigate the reprehensibility of Sanders's actions.

### b. Ratio

For this factor, "the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." **Gore**, 517 U.S. at 581 (internal quotations omitted). The jury's award constituted less than a four-to-one ratio. Ratios of ten-to-one have recently been upheld, but with the remark that this ratio constitutes the upper-limit provided for by due process principles. **Rosenberg v. Mallilo & Grossman**, 798 N.Y.S.2d 322, 331 (Sup. Ct. 2005). The remittitur I order here would reduce the compensatory award to $50,000 and the punitive award to $200,000, which constitutes a four-to-one ratio.

c. **Comparable Penalties**

This final factor requires a comparison to awards authorized in similar cases. Considering the same cases outlined above, the punitive damages awarded here obviously exceed those approved in cases involving forms of misconduct beyond that demonstrated by Sanders. An award of $200,000 would better comport with these cases, constitute a reasonable ratio to the amount suggested for compensatory damages, and still adequately reflect the jury's intention to punish Sanders for his resort to violence in the context of his wealth and abuse of influence.

## IV. CONCLUSION

In light of the foregoing analysis, Sanders's motion is **DENIED** in part and **GRANTED** in part. I will order a new trial unless Denman accepts the remittitur suggested above by March 10, 2006: a reduction to a total compensatory damages award of $50,000 and a total punitive damages award of $200,000.

**SO ORDERED this 24th day of February 2006**
**New York, New York**

　　　　　　　　　　　　　　　　　　　　　　　　Ronald Ellis
　　　　　　　　　　　　　　　　　　　　　　　　**The Honorable Ronald L. Ellis**
　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**